UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EDWARD H. FLINT                                                                    PLAINTIFF

v.                                             CIVIL ACTION NO. 3:10-CV-597-S

HEWLETT-PACKARD COMPANY                            DEFENDANT

## **MEMORANDUM OPINION**

This matter is before the court for consideration whether the court has subject matter jurisdiction under 28 U.S.C. §1332(a) over this lawsuit. The Magistrate Judge first raised a question as to the jurisdictional amount in controversy in a hearing held on May 4, 2011. He then stayed the proceedings, and set a briefing schedule to afford the parties the opportunity to ascertain whether the $75,000 jurisdictional threshold had been met. (DN 48, 57). The parties have now filed their post-hearing briefs and the matter is ripe for decision. (DN 63, 64, 65).

Plaintiff Edward H. Flint filed a *pro se* complaint against defendant Hewlett-Packard Company ("HP") concerning his purchase of an allegedly defective printer. Flint's complaint asserts claims for breach of warranty, fraud, and monopolistic business practices. He demands injunctive relief, an award of compensatory and punitive damages, and a $50 million "fine" should HP be "found guilty by a jury of committing fraud on public consumers ...." (DN 1, Complaint p. 7, ¶ 4). Flint has moved for leave to file an amended complaint to add Home Depot as a party defendant. Because we conclude that the matter in controversy cannot exceed the sum of $75,000 as a matter of law, the Court must dismiss the complaint without prejudice.

The jurisdiction of federal courts is limited. By statute, this court may entertain civil actions that arise under the U.S. Constitution, laws or treaties of the United States (28 U.S.C. § 1331), and

civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. (28 U.S.C. §1332(a)(1)).

The district court is charged with the duty of assessing its jurisdiction and must *sua sponte* dismiss cases in which subject matter jurisdiction is lacking. *See, Nagalingam v. Wilson, Sowards, Bowling & Costanzo,* 8 Fed.Appx. 486, 2001 WL 493392 (6th Cir. May 1, 2001); *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Anusbigian v. Trugreen/Chemlawn, Inc.* 72 F.3d 1253, 1254 (6th Cir. 1996). The Court liberally construes *pro se* pleadings in determining whether claims have been adequately pled. *See, Hahn v. Star Bank*, 190 F.3d 708, 715-16 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000), *citing Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Flint's complaint does not state a claim that implicates the court's federal question jurisdiction.

The only possible basis for subject matter jurisdiction over this action is diversity of citizenship under 28 U.S.C. §1332(a). Flint and HP are citizens of different states. Flint resides in Louisville, Kentucky. According to the complaint, HP "is located" in Palo Alto, California. However, the amount in controversy must exceed the sum or value of $75,000 for this Court to exercise jurisdiction.

Flint must establish that the court has jurisdiction. "The party invoking federal court jurisdiction...has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met. *Hertz Corp. v. Friend*, --- U.S. ----, 130 S.Ct. 1181, 1194-95, --- L.Ed.2d ---- (2010)." *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010).

In *Kovacs v. Chesley*, 406 F.3d 393, 395-97 (6th Cir. 2005), the United States Court of Appeals for the Sixth Circuit stated that:

> The rule governing dismissal for want of jurisdiction in cases brought in federal court is that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal...[I]f from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount ... the suit will be dismissed.

*Kovacs*, 406 F.3d at 395-96, *quoting St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938).

Thus the courts will accept the amount claimed on the face of the complaint unless it appears to a legal certainty that the plaintiff cannot recover that amount, or the court is satisfied from the undisputed evidence of record to a legal certainty that the plaintiff was never entitled to recover that amount in the first instance. *St. Paul Mercury Indemnity Co.*, 303 U.S. at 289. See also, 14 B. Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, §3702 at p. 98-99 n. 88 (Third Ed. 1998 & Supp. 2008) (legal certainty test met "when a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff."). "A claim is less than the jurisdictional amount where the 'applicable state law bar[s] the type of damages sought by the plaintiff.'" *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000) (internal citations omitted). Because this is a diversity action, the law of the forum state, Kentucky, applies. *Montgomery v. Wyeth,* 580 F.3d 455, 459 (6th Cir. 2009).

Even when Flint's claims are liberally construed, it is apparent that, under Kentucky law,

3

Flint cannot recover $75,000 in damages.

Flint claims that the Office Jet Model J4580 all-in-one printer that he purchased from Home Depot for $84.79 in July of 2009 was defective. Apparently he obtained a replacement J4580 printer from HP on April 28, 2010 that also eventually malfunctioned. He alleges that on Sept. 9, 2010, the words "tri-color ink cartridges incomparable [sic]" continuously scrolled across the screen of the printer. Complaint ("Compl."), ¶¶ 19, 22. Flint claims that he made repeated efforts to solve the problem with technical assistance representatives from HP. He maintains that the technicians "in India" spoke "only broken English," and were unable to assist him even though he claims he spent hours on the telephone attempting to resolve the error message. Comp., ¶¶ 19, 22. Ultimately, a technician referred Flint to a "supervisor" who allegedly advised Flint that HP would contact him and that a new printer would be shipped to him. Compl. ¶ 22.

When the anticipated phone call did not come, Flint resumed his calls to HP to obtain information concerning a second replacement printer. Allegedly, after making a series of unsuccessful calls, on September 13, 2010, Flint spoke with an HP "case manager." Compl., ¶ 24. According to Flint, after he related the sequence of events, he was advised that the Officejet Model J4580 all-in-one printer had been discontinued, and that he could purchase a newer-model printer for $119.00. Compl., ¶ 24. Flint claims that the "case manager" told him that the supervisor purportedly promising a free replacement printer of any model lacked the authority to make such a promise. ¶ 24.

Flint maintains that as a result of these events he has suffered physical and mental harm. He further contends that HP has misled its customers by its failure to reveal that the J4580 printer had "problems," and that only HP-brand ink cartridges would operate properly in this printer. Compl.,

4

¶¶ 25, 28, 29, 31.

Flint claims that the J4580 printer came with a warranty in which HP "implied that if the printer didn't work, HP as promised would correct any faults, so it would perform as promised." Compl. ¶ 3. HP has provided a copy of the warranty which contains the following limiting language:

> A. Extent of limited warranty
>
> ...
>
> 5. If HP receives, during the applicable warrant period, notice of a defect in any product which is covered by HP's warranty, HP shall either repair or replace the product, at HP's option.
>
> 6. If HP is unable to repair or replace, as applicable, a defective product which is covered by HP's warranty, HP shall within a reasonable time after being notified of the defect, refund the purchase price for the product.
>
> 7. HP shall have no obligation to repair, replace, or refund until the customer returns the defective product to HP.
>
> 8. Any replacement product may be either new or like-new, provided that it has functionality at least equal to that of the product being replaced.
>
> 9. HP products may contain remanufactured parts, components, or materials equivalent to new in performance.
>
> 10. HP's Limited Warranty Statement is valid in any country where the covered HP product is distributed

by HP. Contracts for additional warranty services such as on-site service, may be available from any authorized HP service facility in countries where the product is distributed by HP or by an authorized importer.

B. Limitations of warranty

TO THE EXTENT ALLOWED BY LOCAL LAW, NEITHER HP NOR ITS THIRD PARTY SUPPLIERS MAKE ANY OTHER WARRANTY OR CONDITION OF ANY KIND, WHETHER EXPRESS OR IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, SATISFACTORY QUALITY, AND FITNESS FOR A PARTICULAR PURPOSE.

C. Limitations of liability

1. To the extent allowed by local law, the remedies provided in this Warranty Statement are the customer's sole and exclusive remedies.

2. TO THE EXTENT ALLOWED BY LOCAL LAW, EXCEPT FOR THE OBLIGATIONS SPECIFICALLY SET FORTH IN THIS WARRANTY STATEMENT, IN NO EVENT SHALL HP OR ITS THIRD PARTY SUPPLIERS BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER LEGAL THEORY AND WHETHER ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

DN 38, Ex. A, Hewlett-Packard Limited Warranty Statement (emphasis in original).

The Kentucky Uniform Commercial Code, Kentucky Revised Statutes ("KRS") Chapter 355, sets out remedies available to buyers of non-conforming goods. KRS 355.2-711(1).

Kentucky law provides that "under the Uniform Commercial Code [which governs the sale

6

of goods], particularly KRS 355.2-316 and 355.2-719, the parties can by contract exclude implied warranties and can limit remedies for breach of warranty." *Cox Motor Car Co. v. Castle*, 402 S.W.2d 429, 431 (Ky. 1966). *See also, Moore v. Mack Trucks, Inc.*, 40 S.W.3d 888, 892-93 (Ky. App. 2001) (Under the Uniform Commercial Code, a seller may limit the remedies available to a buyer for breach of warranty pursuant to KRS 355.2-719)(citing *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 483 (Ky. App. 1978)).

KRS 355.2-719(1)(a), provides that an agreement may limit a buyer's remedy to "repair and replacement of nonconforming goods or parts." Such a limitation is permitted by Kentucky law. *Mayes*, 575 S.W.2d at 483. KRS 355.2-719(3) further provides that "consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." *See, Rudd Construction and Equip. Co., Inc. v. Clark Equip. Co.*, 735 F.2d 974, 979 (6th Cir. 1984) ("Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.") (*quoting* Kentucky Commentary to KRS § 355.2-719).

HP has disclaimed in conspicuous language liability for damages in contract, tort or other any other legal theory arising from the sale of its printer. The sole remedy available to Flint under the provisions of the Limited Warranty Statement, as permitted by KRS 355.2-719(1)(A), is the repair or replacement of the allegedly defective product. Flint does not dispute that he returned the original, defective printer to HP and received a replacement. Apparently, he was also offered the option to obtain another HP printer of comparable value when the replacement printer failed and that model was discontinued.

Accordingly, the Court finds that HP's Limited Warranty Statement precludes Flint from

recovering damages for his alleged injuries under any of the various causes of action related to his purchase of the allegedly defective HP printer. Because of this limited warranty, Flint cannot state a viable damage claim exceeding $75,000.

Flint includes a claim for alleged "monopoly" of the printer ink cartridge market. This claim is based solely on the fact that the HP J4580 printer allegedly operated properly only with HP-brand ink cartridges. For purposes of this analysis, the court construes this *pro se* allegation as an attempt to articulate an antitrust claim under § 2 of the Sherman Act, 15 U.S.C. § 2. The Sherman Act provides that it is unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states...." 15 U.S.C. § 2.

To state an antitrust claim, a plaintiff must do more than merely raise a "naked assertion" of antitrust activity. *NicSand, Inc. V. 3M Co,* 507 F.3d 442, 449-51 (6th Cir. 2007). As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555(2007), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do...." *Id.*

Flint's complaint does not contain even a "formulaic recitation" of antitrust elements. *Bell Atlantic, supra. See American Council of Certified Podiatric Physicians and Surgeons v. American Bd of Podiatric Surgery,* Inc., 323 F.3d 366, 370 (6th Cir. 2003)(quoting *Eastman Kodak Co. V. Image Technical Servs., Inc,* 504 U.S. 451, 481(1992)). Flint's complaint fails to state the most fundamental components of an unlawful monopoly under § 2 of the Sherman Act. Further, were such a claim sufficiently articulated, no antitrust injury has been alleged which would satisfy the jurisdictional threshold of $75,000 in controversy.

Flint alleges that HP "rushed the printer into production" because "they wanted the sales from ink cartridges," but HP "knew the printer was not ready to be sold and they knew the printer had a lot of flaws in it when they released the printer for sale." Compl., ¶ 4. Flint contends that "They intentionally made the printer so that it could not use ink from another manufacture [sic] or a refill of their own cartridges, which forced a consumer to buy their ink cartridges and thereby create a monopoly on the ink cartridges for Hewlett-Packard printers. They created this monopoly [sic] didn't tell or warn the customers before or [sic] doing the sales that the printer would only use HP ink cartridges." Compl., ¶ 5.

Flint's only articulated injury is that his printer malfunctioned and he could not obtain assistance in fixing it nor otherwise achieve a satisfactory resolution with HP. Nowhere in the complaint is there an allegation concerning any purchase or use of HP-brand ink cartridges by Flint. Further, Flint's available remedy - refund or replacement of the printer - would have negated any perceived necessity to purchase HP-brand cartridges.

Finally, Flint asserts that the jurisdictional prerequisite has been met since he demanded a fifty-million dollar fine if HP is "'found guilty' of committing fraud on public consumers." (DN 1, p. 7, ¶ 4). These allegations confuse a civil lawsuit with a criminal prosecution which may not be brought by Flint, a private citizen. Flint has no standing to recover a "fine" for alleged criminal conduct. Therefore, the Court may not consider this demand in assessing the amount in controversy under §1332(a). *See, Holzsager v. Warburton*, 452 F. Supp. 1267, 1274 (D. N.J. 1978) (allegation of amount without foundation will not serve to provide jurisdiction)(citing *Gray v. Occidental Life Ins. Co. of Cal.,* 387 F.2d 935, 936 (3rd Cir. 1968)*; Ehrenfeld v. Webber*, 499 F. Supp. 1283, 1291 (D. Md. 1980).

Based upon the foregoing analysis, the court finds, to a legal certainty, that Flint cannot satisfy the $75,000 amount in controversy requirement to establish diversity jurisdiction under 28 U.S.C. §1332. Accordingly, his complaint must be dismissed without prejudice for want of subject matter jurisdiction. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

August 26, 2011

**Charles R. Simpson III, Judge
United States District Court**